NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0220n.06

Case No. 14-3172

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHILD EVANGELISM FELLOWSHIP OF OHIO, INC., | ) ) ) | **FILED**<br>Mar 19, 2015<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
|  | ) | OHIO |
| CLEVELAND METROPOLITAN SCHOOL | ) |  |
| DISTRICT; ROY JAMES, In his official | ) |  |
| capacity as Principal of Miles Cranwood | ) |  |
| Elementary School, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |

BEFORE: COOK and WHITE, Circuit Judges; MICHELSON, District Judge.[*]

COOK, Circuit Judge. In this First Amendment case, plaintiff Child Evangelism Fellowship of Ohio, Inc. ("CEF") appeals the denial of its motion for a preliminary injunction against defendants Cleveland Metropolitan School District and Roy James, principal of Miles Cranwood Elementary School (collectively, "the District"). CEF sought to enjoin the District from imposing a facilities fee on CEF that it allegedly waived for the Boy Scouts, an act that—according to CEF—amounts to impermissible viewpoint discrimination. The District, in response, argued that it never waived the Scouts' fees—or *any* group's fees—but instead

---

[*]The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

maintained a policy of accepting in-kind payment. The district court denied the preliminary-injunction motion, concluding that CEF could not show a likelihood of success on the merits because the limited evidence before the court suggested that the District does not maintain a fee-waiver policy. We AFFIRM.

I.

*A. The District's Community Use Policy and CEF's Fee-Waiver Demands*

This controversy arises out of the District's refusal to waive fees it assessed to CEF for use of the Miles Cranwood Elementary School's facilities during the 2012–13 academic year. The District makes its facilities available to outside groups through its Community Use Policy. The policy requires a permit for any non-district activities and contemplates that the District will impose a "reasonable fee" for use of the facilities. During the time period giving rise to this suit, the District charged a fee of $69.50 per hour for use of its facilities.

CEF runs an after-school enrichment program, The Good News Club, that encourages learning, spiritual growth, and character development from a Christian viewpoint. According to the complaint, CEF used the School's facilities for its program during the 2011–12 school year without paying a fee.[1] Miles Cranwood's then-principal informed CEF's area coordinator before the 2012–13 school year that CEF would need a permit moving forward. CEF obtained the permit and sent a letter to the District's Board of Education requesting a fee waiver. The letter detailed the Good News Club's offerings and highlighted the fact that participation is free for all students. The District's board denied the request and sent CEF an invoice for the proposed use of its facilities.

---

[1]The District disputes CEF's claim that it was not assessed a fee for the 2011–12 year, stating that "[i]f this actually occurred, it was without the School District's knowledge and authorization"

After learning that the Boy Scouts used the District's facilities without paying a monetary fee, CEF renewed its request for a fee waiver, both in person and in writing. CEF ultimately engaged legal counsel, who sent a final letter alerting the District of its alleged discriminatory policies and practices and once again demanding an immediate waiver of all fees. The letter asserted that certain individuals with the Boy Scouts had "confirmed that facilities use fees [we]re waived by the District for after-school facilities used by the Scouts[.]" The District acknowledged receiving these requests but did not respond to them.

CEF sued and moved for a preliminary injunction against the District. CEF alleged that the District has an unwritten policy allowing school principals to waive facilities fees at their discretion, and that the District's preferential fee waiver for the Boy Scouts amounted to a violation of the First and Fourteenth Amendments.

*B. The District's In-Kind Arrangement Policy*

Responding to CEF's motion, the District denied the existence of a fee-waiver policy or practice. It explained that "in limited circumstances [the District] has agreed to accept goods or services as in-kind payment of the Permit Fee, when requested by the group." The District claims to evaluate in-kind proposals according to three criteria:

(1) the goods or services must be of equal or greater value than the Permit Fees;
(2) the goods or services must be of tangible benefit to the facilities, staff, students, or academic programs; and
(3) the District must not be in a position to readily provide or obtain those goods or services for itself.

The District said it had agreed to such an arrangement with the Boy Scouts. It produced a letter to the Scouts dated October 31, 2010, memorializing a "satisfactory accord based upon an exchange of in-kind services." The letter also states that "[t]here will be no charge for the use of

our schools this year given the costs that you bear in providing approximately $195 worth of supplies, uniforms, camping costs and books to each of the approximately 1,420 students who participate in the program." This $276,900 value exceeds the Boy Scouts' yearly fee assessment of approximately $91,000.

The District further asserted that it does not consider the applicant organization's viewpoint when evaluating a proposal for an in-kind arrangement. It offered its arrangement with The Word Church ("the Church"), an evangelical Christian group, as an example. Under that agreement, the Church provided capital improvements to a Cleveland high school in exchange for its use of the facilities to hold religious services. The District valued the Church's improvements at $168,500, an amount that covered the Church's $149,078 fee. Like the letter to the Scouts, the agreement between the parties expressly contemplates an in-kind exchange.

Finally, the District averred that CEF, unlike the Boy Scouts and the Church, never proposed an in-kind arrangement in lieu of a monetary fee. Instead, it simply asked the District to waive the fee altogether. The District thus maintained that it refused CEF's waiver request because of its policy against outright fee waivers, not because of CEF's religious viewpoint.

*C. The District Court Denies CEF's Motion for a Preliminary Injunction*

In a brief order, the district court denied CEF's motion for a preliminary injunction. The court found that CEF could not demonstrate a likelihood of success on the merits because the record lacked sufficient evidence to show that "a fee-waiver policy exists, let alone that [the District] operates it in a discriminatory matter." Reasoning that CEF could not "demonstrate that [the District] has a fee-waiver policy" and that the District could not discriminatorily apply a fee-waiver policy that never existed, the court found CEF's likelihood of success to be "virtually

zero without additional evidence to corroborate the allegation." (*Id.*) CEF now appeals from the denial.

## II.

"We 'review the District Court's legal rulings de novo' (including its First Amendment conclusion), 'and its ultimate conclusion [as to whether to grant the preliminary injunction] for abuse of discretion.'" *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 454 (6th Cir. 2014) (quoting *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 867 (2005)) (alteration in original). A court weighs four factors when considering a motion for a preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the injunction;
> (3) whether issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). As "a preliminary injunction is an 'extraordinary' form of relief . . . the moving party in the district court has the 'burden of proving that the circumstances clearly demand it.'" *Serv. Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 344 (6th Cir. 2012) (per curiam) (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)).

We follow a three-step analysis when evaluating free speech claims under the First Amendment: first, we ask whether the First Amendment protects the plaintiff's speech; second, we determine the nature of the forum, "because the extent to which the Government may limit access depends on whether the forum is public or nonpublic"; and third, we "assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The parties agree that CEF

engages in protected activity and that the District has created a limited public forum by making its facilities available to outside groups. In such a limited public forum, "the government may restrict speech . . . as long as the restrictions do 'not discriminate against speech on the basis of viewpoint' and are 'reasonable in light of the purpose served by the forum.'" *Miller v. City of Cincinnati*, 622 F.3d 524, 535 (6th Cir. 2010) (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001)).

III.

On appeal, CEF renews its argument that the District maintains an unwritten, discretionary fee-waiver policy that District administrators have applied in a discriminatory manner. Specifically, CEF argues that the District's actions constitute viewpoint discrimination, content discrimination, and a violation of the Equal Protection Clause.

CEF asserts that the District's refusal to waive CEF's fees while not charging the Boy Scouts constitutes impermissible viewpoint discrimination. It cites Supreme Court precedent for the proposition that "the government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression," *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995), and points to numerous lower-court decisions holding that public schools may not impose facilities fees on the Good News Club that the Boy Scouts do not have to pay, *see, e.g.*, *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1069–73 (4th Cir. 2006); *Child Evangelism Fellowship of Greater San Diego v. Bersin*, No. 05CV1166, 2008 WL 5101993, at *3 (S.D. Cal. Dec. 1, 2008); *Child Evangelism Fellowship of Va. v. Williamsburg-James City Cnty. Sch. Bd.*, No. 4:08CV4, 2008 WL 3348227, at *5 (E.D. Va. Aug. 8, 2008). CEF contends the District's refusal to waive

its fees also amounts to impermissible content discrimination and a violation of the Equal Protection Clause.

To the extent that CEF's appeal challenges the basis for the district court's denial of its motion for preliminary relief, it fails. As the district court concluded, CEF's evidence in support of its request for injunctive relief did not adequately show that the District had a fee-waiver policy. To the contrary, at this early juncture, the record supports the District's position that it merely accepted in-kind payment in lieu of monetary fees, as both the 2010 letter to the Scouts and the Church's 2011 lease expressly contemplate exchanges of goods or services.

CEF urges us to disregard the District's alleged in-kind-arrangement policy as an example of a "litigation-driven label" that allows schools to "evade [equal access] by strategically describing existing student groups." It argues that "[w]hat matters for the constitutional inquiry . . . is not what Defendants call their 'arrangement' with the Scouts, but whether CEF has requested equal treatment, and whether Defendants have refused or granted that request." But the cases CEF cites in support of its position featured claims under the Equal Access Act—not the First Amendment—and involved attempts by school districts to limit forum access by differentiating arbitrarily between "curriculum-related" and "non-curriculum-related" groups. *See Mergens*, 496 U.S. at 244; *Straights & Gays for Equality v. Osseo Area Sch.-Dist. No. 279*, 471 F.3d 908, 912 (8th Cir. 2006); *Pope v. E. Brunswick Bd. of Educ.*, 12 F.3d 1244, 1246–54 (3d Cir. 1993).

And as the District notes, "the distinction between a fee-waiver and acceptance of in-kind payment is constitutionally significant" and not a mere difference of labels. A waiver subsidizes speech while accepting an in-kind payment *of equal or greater value* does not. *Cf. Child Evangelism Fellowship of S.C.*, 470 F.3d at 1069 (concluding that a fee waiver is a form of

speech subsidy because it "encourages private speech by making funds available"). The record at this stage shows that the Scouts and the Church provided consideration in excess of their assessed facilities fees, strengthening the District's argument that its in-kind arrangements do not subsidize speech *at all*, let alone selectively.

Overall, the slim record dooms CEF's preliminary-injunction motion. As the district court held below, at this stage, CEF has not shown that a fee-waiver policy even *exists*. Because CEF cannot demonstrate a likelihood of success on the merits of its claim, we need not consider the other preliminary injunction factors.

IV.

CEF argues in the alternative that the District's in-kind arrangement policy, as presented, constitutes an impermissible prior restraint under the First Amendment. Though CEF challenged the constitutionality of the in-kind arrangement policy in a reply brief below, the district court confined its preliminary-injunction ruling to the fee-waiver claim. We generally do not consider issues left unaddressed by the district court. *See Snow Pallet, Inc. v. Clinton Cnty. Indus. Dev. Auth.*, 46 F. App'x 787, 791 n.1 (6th Cir. 2002) (citing *N. Texas Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank*, 222 F.3d 800, 812 (10th Cir. 2000)); *Palshook v. Jarrett*, 32 F. App'x 732, 736–37 (6th Cir. 2002); *Luciani v. Schiavone*, No. 98-4463, 2000 WL 331974, at *6 (6th Cir. 2000); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

CEF urges us to depart from this practice because the issue was "fully briefed" below. *Cf. Babcock & Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co.*, 53 F.3d 762, 767 (6th Cir. 1995) (addressing an issue ignored by the district court's summary-judgment order because "it was fully briefed below" and because the court may uphold the grant of summary judgment "on

grounds other than those used by the lower court"). But it was not fully briefed. CEF introduced this theory in a reply brief, and the court resolved the motion without a hearing, leaving the District no meaningful opportunity to respond to this claim with defenses or evidence of its own. We thus decline to take up the issue at this juncture.[2]

V.

For these reasons, we AFFIRM the judgment of the district court.

---

[2]We do not foreclose CEF from arguing to the district court that it provides what the Scouts provide and what the District deemed sufficient to cover facility costs. The dissent goes a step further by arguing that the Scouts in fact provided no benefit to the District (but only to the District's students), and, thus, "in practice" received a fee waiver. The implication is that CEF, if similarly situated to the Scouts with respect to the Constitution, is also entitled to a waiver. Unlike the dissent, we believe that the current record supports the District's assertion that its arrangement with the Scouts was "in kind."

**HELENE N. WHITE, Circuit Judge, dissenting.**

I agree that CEF failed to "show[] that a fee-waiver policy even *exists*." Maj. Op. 8. CEF has shown, however, that a fee-waiver *practice* existed between the District and the Boy Scouts and that despite repeated requests, the District did not provide CEF with a similar arrangement. I would vacate the district court's denial of CEF's motion for preliminary injunction and remand for further proceedings.

The majority and the district court needlessly focus on whether the District has a fee-waiver policy. Although it appears not to, CEF argues that the District has a "no charge arrangement" with the Boy Scouts—i.e., a practice of waiving fees—and the little evidence in the record supports CEF's contention.

The District's Community Use Policy provides that "the use of the facilities shall be subject to a reasonable fee according to a fee schedule which reflects actual costs to the district for janitorial, light and heat expenses as well as other costs." The District recognizes that the "Community Use Policy as written does not allow for a waiver or reduction of the Permit Fee." Nor does it provide for in-kind exchanges. Nevertheless, according to Deputy Chief Nicholas Jackson's declaration filed in this action, although "principals and building supervisors have no authority to interpret, modify, or deviate from the Community Use Policy," District officials have, "in limited instances, . . . agreed to accept in-kind goods or services *as payment of the Permit Fee*." (Emphasis added.) According to Jackson, the District will accept goods or services as payment of the fee only if the goods or services received are of equal or greater value than the Permit Fees, are of "tangible benefit to the facilities, staff, students, or academic programs," and the District is "not in a position to readily provide or obtain [the goods or services] on its own accord." The District claims to have approved an "in-kind services"

arrangement with the Boy Scouts under these criteria because of "the costs that [the Boy Scouts] bear in providing approximately $195 worth of supplies, uniforms, camping costs and books to each of the approximately 1,420 students who participate in the program."

Assuming the District's in-kind practice as stated comports with the Community Use Policy, which "does not allow for a waiver or reduction of the Permit Fee," the Boy Scouts' arrangement does not comply with either the Community Use Policy or the terms of the in-kind practice. The majority uncritically accepts the District's claim that its arrangement with the Boy Scouts satisfies both, finding, without discussion or analysis of the nature of the Boy Scouts' asserted payment, that the Boy Scouts paid $276,900 as in-kind consideration. Maj. Op. 4, 8.

According to the District, the Boy Scouts agreed to cover participants' "supplies, uniforms, camping costs, and books," which the District acknowledges are normally borne by participants, not by the District. The District does not explain how payment of these program costs compensates the District for its maintenance and utility expenses—because it does not.

The majority reasons "the record supports the District's position that it merely accepted in-kind payment in lieu of monetary fees, as . . . the 2010 letter to the Scouts . . . expressly contemplate[s] exchanges of goods or services." Maj. Op. 7. But an exchange implies mutuality—here, the giving of goods or services to the District that compensates it for the expenses of holding meetings in its schools. The majority fails to recognize that goods or services are not exchanged between the District and the Boys Scouts, but rather the goods and services flow from the Boy Scouts to the participants on the one hand, and the free space flows from the District to the Boy Scouts on the other. Because the District does not pay for its students' expenses related to the Boy Scouts, and thus any value paid by the Boy Scouts does not offset the District's facility-related costs or otherwise financially benefit the District, the record

does not support the conclusion that the costs absorbed by the Boy Scouts are an in-kind payment to the District for "actual costs to the [D]istrict for janitorial, light and heat expenses as well as other costs." In short, the District did not receive goods or services from the Boy Scouts as payment for the Permit Fee, as required by both the District's Community Use Policy and its in-kind practice. This is in contrast to the Church, which made capital improvements to a District facility in exchange for its use of a high-school auditorium to hold religious services.

By allowing the Boy Scouts access to its facilities without payment of the Permit Fee—whether in cash or in kind—the District effectively granted the Boy Scouts a waiver from the Community Use Policy's Permit Fees requirement. CEF requested numerous times to receive a fee waiver and demanded "equal treatment" and "equal access" with the Boy Scouts, but was denied.[1] The District thus bears the burden of explaining why it can constitutionally charge CEF the Permit Fee and not the Boy Scouts. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). The District has not sought to justify its fee-waiver *practice*; instead, it has maintained that it does not have a fee-waiver *policy*. Equal treatment is at issue here; not semantics. Because the district court did not consider whether the fee-waiver practice is viewpoint neutral, I would vacate and remand.

---

[1]Because CEF requested equal treatment with the Boy Scouts, it is not material whether CEF expressly requested an "in-kind arrangement," as the Boy Scouts purportedly did. Even if it were, the District's suggestion that CEF could have learned of the unwritten, unpublished practice through an open-records request, and asked for a similar arrangement based upon the documents it might have received through the request, is unreasonable. Access barriers to limited forums must be reasonable. *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 679 (2010).