RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA ex rel. DAVID FELTEN, M.D., Ph.D.,

*Plaintiff-Appellant*,

*v.*

WILLIAM BEAUMONT HOSPITAL,

*Defendant- Appellee*.

┐
│
│
│
│
> No. 20-1002
│
│
│
│
┘

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-13440—Stephen J. Murphy, III, District Judge.

Argued: October 20, 2020

Decided and Filed: March 31, 2021

Before: McKEAGUE, GRIFFIN, and BUSH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Julie Bracker, BRACKER & MARCUS LLC, Marietta, Georgia, for Appellant. Michael R. Turco, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellee. **ON BRIEF:** Julie Bracker, Jason Marcus, BRACKER & MARCUS LLC, Marietta, Georgia, for Appellant. Michael R. Turco, Jason D. Killips, Steven M. Ribiat, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellee.

BUSH, J., delivered the opinion of the court in which McKEAGUE, J., joined. GRIFFIN, J. (pp. 11–18), delivered a separate dissenting opinion.

---

**OPINION**

---

JOHN K. BUSH, Circuit Judge.    David Felten appeals the district court's partial dismissal of his first amended complaint alleging that William Beaumont Hospital ("Beaumont") violated the anti-retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). Felten claims that Beaumont blacklisted him after he filed a qui tam complaint, in which he alleged that the hospital violated certain federal and state laws.  Notably, the alleged blacklisting occurred after Felten's termination from Beaumont, and Felten's anti-retaliation claim challenges only Beaumont's post-termination actions.  The district court dismissed the claim because it held that the FCA's anti-retaliation provision covers only retaliatory actions taken during the course of a plaintiff's employment.  The district court certified for interlocutory appeal the question whether the FCA's anti-retaliation provision protects a relator from a defendant's retaliation after the relator's termination.  That question is an issue of first impression in our circuit.  Because we hold that the FCA's anti-retaliation provision protects former employees alleging post-termination retaliation, we vacate the district court's dismissal order and remand for further proceedings consistent with this opinion.

I.

On August 30, 2010, Felten filed a qui tam complaint alleging that his then-employer, Beaumont, was violating the FCA and the Michigan Medicaid False Claims Act.  He alleged that Beaumont was paying kickbacks to various physicians and physicians' groups in exchange for referrals of Medicare, Medicaid, and TRICARE patients.  Felten also alleged that Beaumont had retaliated against him in violation of 31 U.S.C. § 3730(h) and Mich. Comp. Laws § 400.610c by threatening and "marginaliz[ing]" him for insisting on compliance with the law.  After the United States and Michigan intervened and settled the case against Beaumont, the district court dismissed the remaining claims, except those for retaliation and attorneys' fees and costs.

Felten subsequently amended his complaint to add allegations of retaliation that took place after he filed his initial complaint.  He alleged that he was terminated after Beaumont

falsely represented to him that an internal report suggested that he be replaced and that his position was subject to mandatory retirement. Felten further alleged that he had been unable to obtain a comparable position in academic medicine. This, he alleged, was because Beaumont "intentionally maligned [him] . . . in retaliation for his reports of its unlawful conduct," undermining his employment applications to almost forty institutions.

The district court granted Beaumont's motion to partially dismiss Felten's first amended complaint. In relevant part, the district court dismissed the allegations of retaliatory conduct occurring after Felten's termination, holding that the FCA's anti-retaliation provision does not extend to retaliation against former employees. The district court interpreted the qualifier "in the terms and conditions of employment" in § 3730(h)(1) to mean that the provision's coverage encompasses only conduct occurring during the course of a plaintiff's employment.

Upon Felten's request to amend the dismissal order, the district court certified for interlocutory appeal the question whether § 3730(h) applies to allegations of post-employment retaliatory conduct. We granted Felten's petition for permission to appeal.

We review de novo a district court's order regarding a motion to dismiss. *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016). We accept a plaintiff's factual allegations as true without presuming the truth of conclusory or legal assertions; then we determine whether the allegations state a facially plausible claim for relief. *Id.* at 345–46.

II.

At issue here is the temporal meaning of the word "employee" and the prohibited employer conduct in the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h)(1). That subsection states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

§ 3730(h)(1). When this provision refers to an "employee" and proscribes certain employer conduct, does it refer only to a current employment relationship, or does it also encompass one that has ended?

To answer that question, we start with the statutory text. *See Binno*, 826 F.3d at 346. We first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," relying on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997). That analysis ends our inquiry "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* at 340 (quotation omitted). But if the text is unclear, we may look at the "[t]he broader context" of the statute and statutory purpose together to resolve the ambiguity. *Id.* at 345–46.

The FCA does not explicitly say whether it pertains only to current employment. However, Beaumont argues that the plain text of the FCA, when read according to relevant canons of statutory interpretation, unambiguously excludes post-termination retaliation. It urges us to adopt the approach of the Tenth Circuit—the only other court of appeals to decide the issue—in *Potts v. Center for Excellence in Higher Education, Inc.*, 908 F.3d 610, 614 (10th Cir. 2018). We respectfully disagree with Beaumont and our sister circuit's conclusion that the answer to the issue presented is clear. As explained below, the statutory text is in fact ambiguous.

We usually interpret a statute according to its plain meaning, without inquiry into its purpose. We also acknowledge the Supreme Court's recent reminders to stay away from extra-textual tools when ascertaining legislative intent. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019); *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). But *Robinson v. Shell Oil* provides guidelines for determining when a statute's meaning is not plain in the context of protections for employees and what to do in the face of ambiguity, and we are bound to follow *Robinson*. *See McKnight v. General Motors Corp.*, 550 F.3d 519, 524 (6th Cir. 2008) (explaining that *Robinson* "laid out a roadmap for statutory interpretation").

In *Robinson*, the Supreme Court held that the term "employees" in § 704(a) of Title VII of the Civil Rights Act of 1964 is ambiguous and could be read to refer to both current and former employees. 519 U.S. at 345. That conclusion flowed from three considerations. First, Congress added "no temporal qualifier" to Title VII to clarify whether the statute includes only current employees or both current and former employees. *Id.* at 341. Second, Title VII's definition of "employee" itself has no temporal qualifier and "is consistent with either current or past employment." *Id.* at 342. Third, Title VII includes other provisions that use the term "employees" to encompass "something more inclusive or different than 'current employees,'" such as a provision authorizing "reinstatement or hiring of employees" as a remedy. *Id.* The Court acknowledged that some sections of Title VII use "employee" to unambiguously mean a "current employee," but it reasoned that that fact shows only that the term "'employees' may have a plain meaning in the context of a particular section—not that the term has the same meaning in all other sections and in all other contexts." *Id.* at 343.

*Robinson*'s reasoning applies with equal force to the FCA's anti-retaliation provision, 31 U.S.C. §3730(h)(1). We address each consideration in turn.

First, there is no temporal qualifier accompanying the term "employee" in § 3730(h)(1), and that provision's explicit reference to "[a]ny employee," *id.* (emphasis added), could mean that it applies to any person who has ever been employed. Beaumont points to the *noscitur a sociis* canon to argue that the list of actionable conduct in § 3730(h)(1) constitutes the temporal limitation that distinguishes § 704(a) of Title VII from the FCA's anti-retaliation provision. True, the first three operative words on that list—"discharged, demoted, suspended"—refer to harm against only current employees. A person cannot be discharged, demoted, or suspended unless he or she first has a job to lose. However, current employment is not necessary for a person to be "threatened," "harassed," or "discriminated" against—the last three types of misconduct specified on the list. Thus, half of the terms on the list can refer to former employees, thereby reducing the value of the *noscitur a sociis* canon in this case. Congress may have included "threatened," "harassed," and "discriminated" in the statute to expand the temporal scope of the anti-retaliation provision because the three terms are, by their plain meaning, not restricted to a current employment relationship.

Beaumont also argues that the qualifier "in the terms and conditions of employment" at the end of the list of sanctionable conduct eliminates any reading that § 3730(h)(1) could provide relief to a former employee. In support, Beaumont notes that the Tenth Circuit held that the qualifier modified the word "discriminated" to make "discriminated in the terms and conditions of employment" a "catch-all phrase" that, under the *ejusdem generis* canon, restricted the meaning of all listed misconduct in § 3730(h)(1) to only activities that occurred while the plaintiff was still employed. *See Potts*, 908 F.3d at 615. With due respect to our sister circuit, we are not convinced. Even if the phrase "terms and conditions of employment" is a catch-all that applies to each listed type of misconduct in § 3730(h)(1), it does not necessarily restrict misconduct to occurrences that take place only while the plaintiff is still employed. There are many terms and conditions of employment that can persist after an employee's termination. *See, e.g.*, *Lantech.com v. Yarbrough*, 247 F. App'x 769, 771–72 (6th Cir. 2007) (referencing a non-compete agreement and confidentiality agreement); *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 528–29 (6th Cir. 2017) (holding non-solicitation provisions enforceable against employees terminated without cause); *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1088–89 (5th Cir. 1987) (holding that a former employee was protected from his employer's discontinuance of severance pay under the ADEA's anti-retaliation provision). Moreover, straightforward application of the *ejusdem generis* canon cuts in favor of finding ambiguity, not clarity, because the terms "threatened" and "harassed"—which can both occur post-employment—are still specific terms that control that general catchall phrase. As in *Robinson*, here, no temporal qualifier indicates that the statute applies only to current employees.

The second *Robinson* consideration—which directs our review to the statutory and dictionary definition of "employee"—also shows that the FCA could cover former employees. The FCA does not define "employee," but in this case, dictionary definitions suffice. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1060 (6th Cir. 2014) (holding that an applicant was not an "employee" under § 3730(h)'s plain meaning). Beaumont contends that the dictionary definitions cited in *Vander Boegh* confine the plain meaning of "employee" to current employees. But the Supreme Court rejected a similar argument in *Robinson*:

> The argument that the term "employed" . . . is commonly used to mean "[p]erforming work under an employer-employee relationship," Black's Law

Dictionary 525 (6th ed. 1990), begs the question by implicitly reading the word "employed" to mean "is employed."  But the word "employed" is not so limited in its possible meanings, and could just as easily be read to mean "was employed."

519 U.S. at 342.**[1]**  Also, that the FCA's anti-retaliation provision excludes applicants—framed in *Vander Boegh* as "potential employees"—does not mean that former employees are likewise excluded from its purview.  772 F.3d at 1062.  In order to be either a current or former employee, an employment relationship must have formed.  A job applicant has never performed work as an employee for the employer; both current and former employees, by definition, have.

Third, here, as in *Robinson*, other aspects of the statutory framework also support a reading that the FCA covers former employees.  The FCA's remedial provision allows former employees to seek relief for post-termination retaliation.**[2]**  For example, a former employee can obtain "reinstatement" as one type of relief under the statute.  *See* 31 U.S.C. § 3730(h)(2) ("Relief under paragraph (1) shall include reinstatement . . . .").  A plaintiff, by definition, must be a former employee; after all, only someone who has lost a job can be reinstated.

Likewise, the provision for special damages can provide relief to former employees.  That provision explicitly remedies "discrimination"—misconduct that is not dependent on whether the plaintiff is still an employee.  *See* § 3730(h)(2) ("Relief . . . shall include . . . compensation for any special damages sustained as a result of the discrimination . . . .").**[3]**

---

**[1]**This Court in *Vander Boegh* and the Supreme Court in *Robinson* were using different editions of Black's Law Dictionary, but the principle applies equally to both editions.

**[2]**The dissent notes that the term "employee" elsewhere in the FCA seems to refer only to current employees.  Dissent at 14.  That possibility does not remove the ambiguity of the term as used in § 3730(h), especially as *Robinson* acknowledges that the context of different sections of a statute can indicate that "the term 'employee' refers unambiguously to a current employee" without necessarily showing "that the term has the same meaning in all other sections and in all other contexts."  519 U.S. at 343.  Ambiguity requires only "that the term 'employees' includes former employees in some sections, but not in others."  *Id.*

**[3]**Indeed, courts have held that the provision for special damages under the FCA is broad and, therefore, can include unlisted remedies such as front pay or noneconomic compensatory damages—remedies that are not necessarily restricted to current employees.  *E.g.*, *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000) ("Damages for emotional distress caused by an employer's retaliatory conduct plainly fall with this category of 'special damages.'"); *Wilkins v. St. Louis Hous. Auth.*, 198 F. Supp. 2d 1080, 1091 (E.D. Mo. 2001) (awarding front pay "to

Also, the catch-all wording of the relief provision can support application of the FCA to former employees. The use of "shall include," especially in combination with an employee's "entitle[ment] to all relief necessary to make that employee . . . whole," demonstrates that the list of remedies is not exhaustive. § 3730(h)(1), (2); *see Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("It is true that use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive.").[4] This expansive catch-all language further shows that remedies exist regardless of whether the plaintiff is still employed.

Beaumont argues that those remedies do not necessarily establish that former employees are entitled to relief. It contends, for example, that reinstatement should be limited to people who were employees when the wrongful conduct occurred. But the text does not contain that limitation. Under § 3730(h)(1), a person out of a job can get the job back as a remedy for the proscribed conduct, regardless of when the wrongful act occurred. Furthermore, the fact that the FCA explicitly creates a cause of action for wrongful discharge, while Title VII prohibits employment discrimination more broadly, is not a meaningful difference in this context. True, reinstatement can be a remedy for wrongful discharge, but that does not change the fact that it could be a remedy for post-termination retaliation as well. The Supreme Court in *Robinson* explicitly invoked the likelihood of a former employee alleging wrongful discharge as support for the proposition that Title VII encompasses former employees, recognizing that because the remedy of reinstatement necessarily applied to former employees, former employees were covered under Title VII whether they were suing in response to a discriminatory discharge or post-employment retaliation. 519 U.S. at 342–43.

In short, we could read the statute in two ways: applying only to current employees or reaching those who have lost their jobs. We think the latter is the more accurate reading.

___

effect the express Congressional intention that a claimant under § 3730(h) be made whole" even though "the FCA does not specifically include front pay as a remedy").

[4]*See also BellSouth Telecomms., Inc. v. Ky. Pub. Serv. Comm'n*, 669 F.3d 704, 713 (6th Cir. 2012) (citing *Samantar*); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 337 (4th Cir. 2012) ("Courts have repeatedly indicated that 'shall include' is not equivalent to 'limited to.'"). Courts of Appeals have also held that similar language in the Sarbanes-Oxley Act precedes a non-exhaustive list of available relief, empowering courts to award relief for emotional distress. *See Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 672 (4th Cir. 2015); *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 264–65 (5th Cir. 2014); *Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1138 (10th Cir. 2013).

But given the Supreme Court's guidance in *Robinson*, we ultimately hold that the term "employee," as used in the statute, is ambiguous.

When confronted with similar ambiguity, the *Robinson* Court looked to the "broader context of Title VII and the primary purpose of § 704(a)" to hold that former employees were covered by Title VII's anti-retaliation protections. 519 U.S. at 345–46. The lack of statutory clarity here compels an analogous approach. As discussed, the FCA's remedial provision indicates that former employees may sue under § 3730(h). And *Robinson* found it relevant that excluding former employees from the protections of Title VII would "effectively vitiate much of the protection afforded by [the statute]" because it would deter reporting to the government and "provide a perverse incentive for employers to fire employees who might bring Title VII claims." *Id.* So too here. The FCA is designed to "discourage fraud against the government," *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994), and the purpose of the Act's anti-retaliation provision is to encourage the reporting of fraud and facilitate the federal government's ability to stymie crime by "protect[ing] persons who assist [in its] discovery and prosecution," *Neal v. Honeywell Inc.*, 33 F.3d 860, 861 (7th Cir. 1994), *abrogated on other grounds by Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409 (2005)). If employers can simply threaten, harass, and discriminate against employees without repercussion as long as they fire them first, potential whistleblowers could be dissuaded from reporting fraud against the government. *See Haka v. Lincoln Co.*, 533 F. Supp. 2d 895, 917 (W.D. Wis. 2008) (holding that the reasoning in *Robinson* applied equally to the FCA and that including former employees "was necessary to effectuate the provision's primary purpose: '[m]aintaining unfettered access to statutory remedial mechanisms.'" (quoting *Robinson*, 519 U.S. at 346)). We therefore hold that the anti-retaliation provision of the FCA may be invoked by a former employee for post-termination retaliation by a former employer.

We acknowledge that our decision creates a circuit split. Our analysis differs from that of the Tenth Circuit primarily with regard to *Robinson*'s first and third factors: whether the statute includes a temporal qualifier and whether other provisions envision both current and former employees. We deem it a better fit with all of *Robinson*'s considerations to construe § 3730(h)(1) to effectuate the statute's broader context and purpose.

III.

Finally, Felten argues for the first time on appeal that the "terms and conditions of employment" provision of § 3730(h) includes blacklisting.  Although the district court invoked the "terms and conditions of employment" qualifier as a reason why post-employment retaliatory action did not fall within the FCA's ambit, it did not address whether blacklisting is included as a form of prohibited retaliatory action.  Thus, we do not address the issue; instead, we remand for the district court to consider the issue in the first instance.  *See Child Evangelism Fellowship of Ohio, Inc. v. Cleveland Metro. Sch.*, 600 F. App'x 448, 453 (6th Cir. 2015) ("We generally do not consider issues left unaddressed by the district court.").

IV.

We vacate the district court's order granting Beaumont's motion to partially dismiss Felten's first amendment to his complaint and remand for further proceedings consistent with this opinion.

_____

**DISSENT**

_____

GRIFFIN, Circuit Judge, dissenting.

This case asks if the word "employee," when used in the False Claims Act ("FCA"), refers to someone who is not an employee. To ask the question is to answer it. Instead of applying tried-and-true tools of statutory interpretation to their logical end, the majority rushes to find ambiguity then divines congressional intent from its own perception of which reading would best serve the FCA's "broader context and purpose." As a result, the majority's opinion creates a circuit split and contradicts the decision of nearly every other federal court that has considered whether the FCA's anti-retaliation provision extends to former employees. Because the FCA unambiguously reserves retaliation claims for only those plaintiffs who were employees when they were retaliated against, I respectfully dissent.

I.

The only question before us is whether the FCA's anti-retaliation provision prohibits retaliation against former employees. "A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself." *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011) (internal quotation marks and citation omitted). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Id.* at 583 (citation omitted). The FCA's anti-retaliation provision provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). This is not the first time that we have examined the plain meaning of "employee," as used in this provision. We have said that, for the purposes of the FCA's anti-

retaliation provision, an employee is "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance," *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1060 (6th Cir. 2014) (quoting Black's Law Dictionary 639 (10th ed. 2014)), or "'[a] person working for another person or a business firm for pay,'" *id.* (quoting Random House Webster's Unabridged Dictionary 638 (2001)). *Id.* at 1062.

Thus, under our precedent and the plain language of the statute, whether a former employee falls within the definition of "employee" is a straightforward inquiry:  does a former employee work in the service of his former employer under a contract of hire or for pay?  The answer is "no," otherwise he would not be a former employee.  This alone mandates affirming the district court.[1]

If our precedent and the statute's plain language were not enough, the specific context in which "employee" is used also compels the conclusion that former employees are beyond the anti-retaliation provision's scope.  To have a cause of action, a plaintiff must have been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment."  31 U.S.C. 3730(h)(1).  Of these six categories of retaliatory acts, four can be committed only during employment: only a current employee can be discharged, demoted, suspended, or discriminated against in the terms and conditions of employment.

True, a former employer could harass or threaten a former employee.  But the canon of *noscitur a sociis* requires us to temporally limit the scope of these undefined terms.  This canon instructs that "the meaning of an undefined term may be deduced from nearby words."  *United*

---

[1]Felten argues that *Vander Boegh* supports his position that former employees may bring retaliation claims based on post-employment conduct because there we observed that one portion of the FCA's legislative history "suggest[ed] that 'employee' extends to former employees, as well as present employees." 772 F.3d at 1063.  But Felten concedes that this observation is dicta, and therefore nonbinding on this panel.  *See, e.g., Johnson v. City of Cincinnati*, 310 F.3d 484, 493 (6th Cir. 2002).  Moreover, even if *Vander Boegh*'s observation regarding the FCA's legislative history is accurate, it is irrelevant.  A court may look to legislative history only when "a plain reading leads to ambiguous or unreasonable results."  *United States v. Vreeland*, 684 F.3d 653, 662 (6th Cir. 2012) (citation omitted); *see also Chrysler Corp. v. C.I.R.*, 436 F.3d 644, 654 (6th Cir. 2006).  Here, a plain reading of the FCA merely reserves retaliation claims for plaintiffs who were employees when they were retaliated against.

*States v. Miller*, 734 F.3d 530, 541 (6th Cir. 2013).  This "associated-words" canon provides that, when words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012).  Specifically, this canon holds that "words grouped in a list should be given related meanings."  *Id*. (quoting *Third Nat'l Bank in Nashville v. Impac Ltd*., 432 U.S. 312, 322 (1977)).

The meanings of "threatened" and "harassed" must therefore be consistent with their neighbors, all of which are temporally limited to current employment.  Thus, "threatened" and "harassed" are likewise limited to existing employer-employee relationships, which places post-employment retaliation against former employees beyond the reach of the anti-retaliation provision.

A second canon of statutory interpretation, *ejusdem generis*, further confirms this temporal limitation.  *Ejusdem generis* dictates that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Miller*, 734 F.3d at 541 (citation omitted). "[W]hen a drafter has tacked on a catchall phrase at the end of an enumeration of specifics," *ejusdem generis* implies the addition of the word "similar" between the last specific and the catchall phrase.  Scalia & Garner, *supra*., at 199.

The FCA's anti-retaliation provision lists five specific categories of retaliatory conduct, then includes a catchall phrase that applies to employees who have been "in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. § 3730(h)(1). *Ejusdem generis* limits the catchall phrase's scope to discriminations that are similar to discharges, demotions, suspensions, threats, and harassment.  And these general discriminations are actionable only if they occur in the terms and conditions of employment.  *Id*.  To comply with *ejusdem generis*, threats and harassment must also be prohibited only if they occur during the employment relationship.

We should also look to other portions of the FCA. "A standard principle of statutory construction provides that identical words . . . within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs.*, *Inc.*, 551 U.S. 224, 232 (2007). The FCA is not a particularly long statute, and it uses the word "employee" in only a few other provisions. None of these other uses can be reasonably read as "former employee." For example, the FCA provides that "[n]o court shall have jurisdiction over an action brought [by a private person] against . . . a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought." 31 U.S.C. § 3730(e)(2)(A). "[S]enior executive branch official" is in turn defined as "any . . . employee listed in paragraphs (1) through (8) of section 101(f) of the Ethics in Government Act of 1978," 31 U.S.C. § 3730(e)(2)(B), which includes a huge swath of the executive branch, from the President, 5 U.S.C. App.4 § 101(f)(1), to the Social Security Administration's many administrative law judges, *id*. at § 101(f)(4). If, when used in the FCA, "employee" means "former employee," then thousands of executive branch officials receive lifetime immunity from certain *qui tam* suits on their first day of work. This immunity, which makes it *more* difficult to enforce the FCA, would not align with the statute's purported goal of reducing fraud against the government.

Or consider a provision at the very heart of the act: the definition of "claim." The FCA defines "claim" as "any request or demand . . . for money or property . . . that . . . is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2). Suppose a federal employee quits her government job and starts her own business. If one of her vendors sends her a false claim, has it violated the FCA? Of course not; she was not a United States employee when the vendor presented her with the false claim. But under the majority's interpretation of the word "employee," the vendor could be liable under the FCA for submitting a false claim to a former United States employee.

Finally, persuasive case law supports affirming the district court. Nearly every federal court that has considered whether the FCA's anti-retaliation provision is temporally limited to current employees—including a unanimous panel of the only other circuit court of appeals to have examined that question—has reached the same conclusion: the FCA's anti-retaliation

provision does not apply to post-employment retaliation.  *See Potts v. Ctr. for Excellence in Higher Educ.*, 908 F.3d 610, 613–16 (10th Cir. 2018).**2**

## II.

In response to this overwhelming authority, the majority contends that we are bound to follow "guidelines," purportedly established in *Robinson v. Shell Oil*, 519 U.S. 337 (1997), that "determine[e] when a statute's meaning is not plain in the context of protections for employees[.]"  I see nothing in *Robinson* that exempts the word "employee" from its plain meaning or the tools of statutory interpretation that I apply above.  Nor does anything in that case suggest that the Supreme Court was inventing new theories of interpretation that apply only to "protections for employees."  And it is odd that the majority cites *McKnight v. General Motors Corp.*, 550 F.3d 519 (6th Cir. 2008), for this remarkable assertion.  The "roadmap" that we described *Robinson* as laying out in that case related only to run-of-the-mill principles of statutory interpretation, such as looking first to a statute's plain language.  *See id*. at 524–25.  We have never recognized *Robinson* as establishing special rules for employee protections.  In fact, we have explicitly concluded that "*Robinson* did not alter the rules of statutory interpretation," and have declined to extend *Robinson*'s reasoning beyond the Title VII context.  *Id*. at 527–28.  Simply put, the majority's belief that *Robinson*—a Title VII case—created employee-specific interpretative "guidelines" that compel reversal in this FCA case is baseless.

Nor does *Robinson*'s reasoning "appl[y] with equal force to the FCA's anti-retaliation provision."  As the majority notes, *Robinson* relied on three considerations to find that Title

---

**2***See also, e.g.*, *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 208 (D.D.C. 2011) ("The plain language . . . clearly establishes that Section 3730(h) applies only to the employment context and, therefore, cannot extend to claims for retaliatory action occurring solely after a plaintiff has been terminated from his job."); *United States ex rel. Complin v. North Carolina Baptist Hosp.*, 2019 WL 430925, at *10 (M.D.N.C. Feb. 4, 2019); *Elkharwily v. Mayo Holding Co.*, 84 F. Supp. 3d 917, 927 n.7 (D. Minn. 2015), *aff'd on other grounds*, 823 F.3d 462 (8th Cir. 2016); *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 138 (D.D.C. 2014); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 306 (S.D.N.Y. 2014); *Master v. LHC Group Inc.*, No. 07-1117, 2013 WL 786357, at *6 (W.D. La. March 1, 2013); *Bechtel v. Joseph Med. Ctr.*, No. MJG-10-3381, 2012 WL 1476079, at *9–10 (D. Md. Apr. 26, 2012); *Poffinbarger v. Priority Health*, No. 1:11-CV-993, 2011 WL 6180464, at *1 (W.D. Mich. Dec. 13, 2011); *United States ex rel. Davis v. Lockheed Martin Corp.*, 2010 WL 4607411, *8 (N.D. Tex. 2010); *United States ex rel. Wright v. Cleo Wallace Ctrs*, 132 F. Supp. 2d 913, 928 (D. Colo. 2000). The minority of courts have, like my colleagues, mistakenly transplanted *Robinson* from the Title VII context to the FCA context. *See Ortino v. Sch. Bd. of Collier Cty*, 2015 WL 1579460, at *3–4 (M.D. Fla. April 9, 2015); *Haka v. Lincoln Cty.*, 533 F. Supp. 2d 895, 917 (W.D. Wis. 2008).

VII's anti-retaliation provision's use of the word "employee" was ambiguous. First, the Court noted that "there is no temporal qualifier in the statute such as would make plain that [42 U.S.C. § 20000e-3(a)] protects only persons still employed at the time of the retaliation." *Id*. at 341. Second, the Court noted that Title VII's general definition of "employee" as "an individual employed by an employer," "likewise lacks any temporal qualifier and is consistent with either current or past employment." *Id*. at 342 (quoting 42 U.S.C. § 2000e(f)). The Court reasoned that "employed" could just as easily be read to mean "was employed" as "is employed." *Id*. (emphases omitted). Third, the Court noted that "a number of other provisions in Title VII use the term 'employees' to mean something more inclusive or different than 'current employees.'" *Id*. The Court then resolved this ambiguity in favor of including former employees into the anti-retaliation provision's definition of "employee." The Court concluded that this interpretation was more aligned with Title VII's broader context and the anti-retaliation provision's primary purpose. *Id*. at 345–46.

None of the three *Robinson* considerations are present here. First, the FCA's anti-retaliation provision has a temporal limitation. To have a retaliation claim, a person must have been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. 3730(h).[3] As explained above, these categories limit plaintiffs to those people who were employees when they were subject to retaliation. Second, the FCA does not contain a general definition for "employee" (ambiguous or otherwise) so we must apply that word's "ordinary and natural meaning." *United States v. Lumbard*, 706 F.3d 716, 723 (6th Cir. 2013). And the plain meanings of "employee" that we have previously recognized have temporal limitations that denote a present, continuing employer-employee relationship. *Vander Boegh,* 772 F.3d at 1060, 1062. Third, in contrast to Title VII, no other provision of the FCA uses the term "employee" to mean anything different or more inclusive than its ordinary meaning.

---

[3]In contrast, Title VII's anti-retaliation provision provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The majority contends that the anti-retaliation provision's remedies section, § 3730(h)(2), shows that Congress intended former employees to qualify for relief.  In particular, the majority highlights that the non-exhaustive list of remedies available to retaliated-against employees includes reinstatement and special damages.  But the majority's consideration of this section misses the point.  Nobody disputes that former employees *can obtain relief* under the anti-retaliation provision.  For example, the FCA creates a specific cause of action for retaliatory discharge, which can be brought only by discharged (former) employees.  Or an employee might quit or retire after their employer mistreats them because of their FCA-protected activity.  These former employees, however, would have been current employees when they were retaliated against.  The relevant consideration is not the employment status of the plaintiff at the time of suit, but rather the employment status of the plaintiff at the time of retaliation.  *See Potts*, 908 F.3d at 614 ("[W]hat matters is the employee's employment status when the employer retaliates.").  Thus, the remedies provision is perfectly consistent with the statute's reservation of claims to employees.

In sum, our precedent, dictionary definitions, the canons of statutory interpretation, and persuasive case law indicate that "employee" does not mean "former employee," and *Robinson* neither compels nor supports a contrary conclusion.  The word "employee," as used in the FCA, is not ambiguous.  Because plaintiff was not an employee when he was allegedly blacklisted, we should affirm the district court.

## III.

One final note.  After the majority finds ambiguity, it determines which result the FCA should achieve.  In doing so, it engages in unauthorized, unnecessary purposivism.  *See* Scalia & Garner, *supra.*, at 18 ("Where purpose is king, text is not—so the purposivist goes around or behind the words of the controlling text to achieve what he believes to be the provision's purpose.").  Purposivism "suggests courts can simply ignore the enacted text and instead attempt to replace it with an amorphous 'purpose' that happens to match with the outcome one party wants."  *Arangure v. Whitaker*, 911 F.3d 333, 345 (6th Cir. 2018).  But Congress establishes a statute's purpose "by negotiating, crafting, and enacting statutory text," and "[i]t is that text that controls, not a court's after-the-fact reevaluation of the purposes behind it."  *Id*.  The majority is

well-aware of the dangers of purposivism yet proceeds to replace Congress's judgment with its own.  Although attempting to discern a statute's purpose might be permissible when, as in *Robinson*, the text is ambiguous, the circumstances of this case do not authorize such an amorphous inquiry.  Congress unambiguously told us that the anti-retaliation provision applies only to "employees," so this Court lacks the authority to rewrite that term to define anything broader, narrower, or different than its plain meaning.  That task should be left to Congress.

IV.

For these reasons, I respectfully dissent.