RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: VILLAGE APOTHECARY, INC.,

　　　　　　　　　　　　　　　　　　　　　　*Debtor.*

_____

SILVERMAN & MORRIS, P.L.L.C.,

　　　　　　　　　　　　　　　　　　　　　　*Appellant.*

No. 21-1555

Appeal from the United States District Court for the Eastern District of Michigan at Detroit;
No. 2:21-cv-10892—Stephen J. Murphy, III, District Judge.

United States Bankruptcy Court for the Eastern District of Michigan;
No. 2:15-bk-56003—Thomas J. Tucker, Judge.

Argued: March 8, 2022

Decided and Filed: August 16, 2022

Before: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Thomas R. Morris, MORRIS & MORRIS ATTORNEYS, P.L.L.C., Dexter, Michigan, for Appellant. **ON BRIEF:** Thomas R. Morris, MORRIS & MORRIS ATTORNEYS, P.L.L.C., Dexter, Michigan, for Appellant.

─────────────────

## OPINION

─────────────────

NALBANDIAN, Circuit Judge. As special counsel, the law firm of Silverman & Morris recovered $38,000 for the estate in this bankruptcy proceeding. For its services, the firm wanted $37,063 in fees. But the bankruptcy court, finding that the benefit of the services did not warrant awarding the full amount, halved the award, and the firm appealed. On appeal, we must address

two issues.   The first is whether bankruptcy courts can consider "results obtained" when determining whether fees are reasonable under § 330(a)(3) of the Bankruptcy Code.   The second is whether the bankruptcy court abused its discretion in reducing the fees by half.   We answer yes to the first and no to the second.   So we **AFFIRM**.

## I.

We divide our discussion of the background into three parts.   First, we explain the relevant statutory background.   Then we recount the facts.   And finally, the procedural history.

### A.

Under the Bankruptcy Code, courts "may award" a "reasonable compensation" to a "professional person" for their services.   11 U.S.C. § 330(a).   The main issue here deals with how courts determine the amount of reasonable compensation.   Before 1994, § 330 instructed courts to look at "the time, the nature, the extent, and the value" of the services as well as the costs of "comparable services."   Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 330(a)(1), 92 Stat. 2549, 2564 (1978).   But without more guidance, courts came up with different approaches to answer the question.

One approach looked to Title VII, which, like the Bankruptcy Code, gives courts discretion to award "reasonable . . . fees."   42 U.S.C. § 2000e-5(k); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).   In *Johnson*, the Fifth Circuit used twelve factors to analyze whether attorney's fees were reasonable under Title VII.[1]   488 F.2d at 717–19.   And some courts integrated these factors to the bankruptcy context.   *See, e.g., Harman v. Levin*, 772 F.2d 1150, 1152 n.1 (4th Cir. 1985); s*ee also* 3 Collier on Bankruptcy § 330.03(9) & n.71 (16th ed. 2022) (collecting cases).

---

[1]These factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skills requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney for acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  488 F.2d at 717–19.

Another approach, adopted by this Court, required bankruptcy courts to calculate reasonable compensation by using the "lodestar method." *See In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). Under *Boddy*'s approach, bankruptcy courts first determine the "lodestar" amount by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." *Id.* (quoting *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990)). Then, and only then, may the court "exercise its discretion" and vary the award based on the same *Johnson* factors.[2] *Id.* at 338 (citing *Harman*, 772 F.2d at 1152 n.1). Relevant here is the eighth factor, which asks courts to consider the "amount involved and the results obtained." *Johnson*, 488 F.2d at 718.

In 1994, Congress amended § 330, codifying many, but not all, of these factors. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 224, 108 Stat. 4106, 4130–31 (1994); *see also* 3 Collier, *supra*, § 330.03(9) ("A majority of the *Johnson* criteria are now codified in section 330(a)(3)."). Section 330(a)(3) now instructs courts to "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including" the time spent, rates charged, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered," among others. 11 U.S.C. § 330(a)(3). But the statute does not mention the "results obtained" factor.

Although § 330 gives bankruptcy courts broad discretion to award fees, it categorically excludes fees in three circumstances. Under § 330(a)(4), "the court shall not allow compensation for" (1) "unnecessary duplication of services," (2) "services that were not reasonably likely to benefit the debtor's estate," or (3) services that were not "necessary to the administration of the case." *Id.* § 330(a)(4).

The interplay between § 330(a)(3) and § 330(a)(4) underlies much of our discussion below. Unlike § 330(a)(3), which concerns how to determine "the amount of reasonable compensation," § 330(a)(4) deals with a precursory question: whether the fees are compensable. In other words, if fees are not barred by § 330(a)(4), they are not automatically awarded.

---

[2]The *Boddy* court did not explicitly call these factors the *Johnson* factors, but it cited *Harman*, the Fourth Circuit case that adopts and discusses the *Johnson* factors. For ease, we will call the *Johnson* factors the "lodestar factors" unless citing other sources.

Instead, courts look at the factors in § 330(a)(3) to determine whether it should reduce those fees.

Since the 1994 Amendment, we have not considered whether bankruptcy courts may continue to consider, for the § 330(a)(3) analysis, other lodestar factors—like "results obtained"—that were not codified. This case raises that question.

**B.**

In 2015, the Village Apothecary, a pharmacy in Ann Arbor, Michigan, filed for Chapter 7 bankruptcy. Shortly after, the bankruptcy court appointed Douglas Ellmann as trustee and the law firm of Silverman & Morris as the trustee's special counsel. The law firm was brought on to investigate potential causes of action that, if successful, could have benefitted the estate by at least $1,655,962, or so the law firm thought.

The law firm embarked on a year-long investigation of the debtor's finances. It discovered, among other things, that the pharmacy could pursue certain actions against the pharmacy's president, Garry Turner. As it turned out, Turner had failed to repay a loan he owed the pharmacy. He also transferred some inventory from the pharmacy to a different company that he owned. And while the pharmacy had an option to buy the place it was renting, Turner and his wife had created a separate company, bought the property, and sold it for a profit. Believing that Turner had breached his fiduciary duty to the pharmacy and converted its property, the law firm drafted a complaint against Turner.

The law firm, however, never filed the complaint. Instead, it showed the complaint to Turner's attorney, who disputed the claims. Turner's attorney explained that the pharmacy could not purchase the property and that some of the other claims were untimely. As a result, the law firm (and the trustee) thought the claims would go nowhere and settled with Turner for $38,000. Apart from this $38,000, there was not much left in the pharmacy's assets, which totaled $40,710.87.

The law firm believed that it was entitled to fees for its services, so it filed a fee application under § 330. It asked for a little over $37,000, which, if granted, would have amounted to "90.6%" of the estate's assets. The trustee and the trustee's attorneys also filed for

fees.  The bankruptcy court considered all three together.  Although there were no objections to the fee applications, the bankruptcy court thought it was necessary to hold a hearing to determine whether the fee amounts should be reduced "given the amount of the benefit to the estate."

**C.**

Following the hearing, the bankruptcy court determined that the fees should be reduced by half.  It found that the law firm and the trustee's professional fees would amount to 100% of the amount collected for the estate, "leaving nothing to be distributed to . . . creditors."  (R. 4, Bankruptcy Order, PageID 198.)  After a series of back-and-forths with the district court (where the latter reversed the bankruptcy court twice), the bankruptcy court considered the fee application for a third time, again holding that the law firm's fees should be reduced by half.  The bankruptcy court based its decision on two separate rationales.  First, the court applied the lodestar factors, balancing the "amount in controversy" with the "results obtained" and concluded that the level of success was essentially nothing (since nothing would be left over for the creditors).  In the alternative, the court relied on a "billing judgment" argument, a term it used to capture the idea that attorneys in non-bankruptcy cases typically reduce their fees so their clients can get a share of the award.  The court explained that this factor was unnecessary to its decision because it would have reduced the fees by 50% based on the first rationale.

The law firm appealed to the district court again.  This time, the district court affirmed, finding that the bankruptcy court's application of the "results obtained" factor was proper.  The district court held that "results obtained" is still a relevant lodestar factor and determined that the bankruptcy court did not abuse its discretion in reducing fees by 50%.  The law firm appealed.

**II.**

We review a bankruptcy court's award of fees under the abuse of discretion standard.  *In re Boddy*, 950 F.2d at 336.  This is a "highly deferential" standard, so we disturb a decision only if it is based on clearly erroneous findings of facts, improperly applies the law, or relies on an incorrect legal standard.  *Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021).  The party requesting the fees has the "burden of proof as to entitlement to and reasonableness of" those fees.  *In re McLean Wine Co.*, 463 B.R. 838, 846 (Bankr. E.D. Mich. 2011) (quoting *In re*

*Kieffer*, 306 B.R. 197, 206 (Bankr. N.D. Ohio 2004)); *see also In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013) ("The burden is on the party requesting fees to establish that its request is reasonable.").

## III.

On appeal, the law firm makes two arguments. First, it claims that § 330(a)(3) of the Bankruptcy Code now bars courts from considering "results obtained" as a factor in determining the reasonableness of fees. And second, it argues that the court abused its discretion in reducing the fees by half.[3] We address each in turn.

## A.

In *Boddy*, we explained the framework that bankruptcy courts must use in determining the reasonableness of fees under § 330. 950 F.2d at 337. First, courts must calculate the "lodestar amount" of fees, which is determined by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." *Id.* (quoting *Grant*, 908 F.2d at 879). Then courts can look to the lodestar factors, which include the "results obtained." *Id.* at 338 (citing *Harman*, 772 F.2d at 1152 n.1). But, as mentioned, *Boddy* was decided before the 1994 Amendment, and we have not since considered how that Amendment impacted the *Boddy* framework. The law firm argues that the Amendment bars bankruptcy courts from considering "results obtained." As the law firm sees it, the Bankruptcy Code now requires courts to look at the benefit of the services only at the time services were rendered, which conflicts with looking at whether the services result in a benefit to the estate. We disagree.

## 1.

Section 330(a)(3) does not preclude courts from considering "results obtained" as a relevant factor. When interpreting a statute, the inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016) (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). Section 330(a)(3)

---

[3]The firm also challenges the bankruptcy court's alternative rationale that lawyers generally exercise billing judgment and decrease their fees. But, like the district court, we will not address this argument as it does not affect the outcome.

provides that, "[i]n determining the amount of reasonable compensation to be awarded" to a "professional person, the court shall consider the nature, the extent, and the value of such services." 11 U.S.C. § 330(a)(3). And it instructs the courts to "tak[e] into account all relevant factors, including" the time spent, rates charged, "whether the services were necessary . . . or beneficial at the time at which the service was rendered," as well as other factors. *Id.*

This language, contrary to the law firm's contention, does not exclude courts from considering the "results obtained" as a lodestar factor. Not only does the statute introduce the list of factors with the word "including," it also permits courts to consider "all relevant factors." *Id.* Both textual hooks refute the law firm's conclusion that bankruptcy courts cannot consider "results obtained."

Although context matters, most courts read the word "include" to introduce a nonexhaustive list. *See, e.g.*, *Samantar v. Yousuf*, 560 U.S. 305, 316–17 & n.10 (2010); *Cumberland Reclamation Co. v. Sec'y, U.S. Dep't of Interior*, 925 F.2d 164, 167 (6th Cir. 1991) ("[T]he use of the word 'including' indicates that Congress did not intend for the list to be exhaustive."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text* 132–33 (2012) (explaining that "*include* does not ordinarily introduce an exhaustive list" but "introduces examples"). Thus, when a statute introduces a list of factors with the word "include," courts are not bound by that list and may consider other factors not provided. *See* *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196–97 (2021) (explaining that the factors listed in 17 U.S.C. § 107, the fair-use provision, are "not exhaustive" because they are introduced by the word "include"). Here § 330(a)(3) does just that. It introduces the factors that bankruptcy courts should consider by using the word "including." So Congress was listing some of the factors that courts may consider, and we cannot read the statute as limiting the bankruptcy courts' ability to consider factors not listed.

Moreover, Congress explicitly instructed courts to consider "all relevant factors." 11 U.S.C. § 330(a)(3). It is a basic canon of statutory interpretation that "[e]very word in the statute is presumed to have meaning" and that courts should "give effect to all the words to avoid an interpretation which would render words superfluous or redundant." *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (quoting *Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001)).

Were the factors listed in § 330(a)(3) meant to be exhaustive, then the directive to consider "all relevant factors" would be meaningless. After all, what work would that directive be doing if Congress meant courts to consider only the listed factors? Congress could have, for example, stated that courts should "take into account the following factors." But it did not. It used the language of "all relevant factors," and we interpret such language broadly. *See Cudahy Packing Co. of La. v. Holland*, 315 U.S. 357, 361 (1942) ("We cannot read 'any or all' as meaning 'some.'").

We have also interpreted a provision with similar language in the same way. *See United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 434 (6th Cir. 2021), *cert. denied sub nom.*, 142 S. Ct. 896 (2022). In *Felten*, we considered the relief provision in the False Claims Act. *See id.* That provision provides that an employee "shall be entitled to *all relief necessary*" and that this "[r]elief . . . shall *include* reinstatement . . . [two] times the amount of back pay, interest on the back pay, and compensation for any special damages." 31 U.S.C. § 3730(h)(2) (emphasis added). We explained that the remedies listed were "not exhaustive." *See Felton*, 993 F.3d at 434. To reach that conclusion, we emphasized the same language relevant here—the statute provided for "all relief necessary," and introduced the remedies by using "shall include." *Id.* Other remedies not listed, we found, were available. *Felten*'s reasoning applies with full force here. Section 330(a)(3) instructs courts to consider "all relevant factors" and introduces a list of factors by using "including," so like in *Felten*, courts may consider other factors.

To be sure, courts sometimes interpret "include," depending on the context, to introduce an exhaustive list. *See Carcieri v. Salazar*, 555 U.S. 379, 391–92 (2009) (holding that a list following "shall include" was exhaustive where Congress "defined the term by including only three discrete definitions"); *see also Cyrus v. Univ. of Toledo*, No. 20-3913, 2022 WL 985819, at *9–13 (6th Cir. Apr. 1, 2022) (Nalbandian, J., dissenting) (collecting cases). But nothing in § 330(a)(3) suggests it should be given that exhaustive reading. The factors listed have a unifying theme: they are some, but not all, of the lodestar factors. *See* 3 Collier, *supra*, § 330.03(9) ("A majority of the *Johnson* criteria are now codified in section 330(a)(3)."). Before the 1994 Amendment, bankruptcy courts used these factors to determine whether the fees were

reasonable. *Id.*; *see also In re Boddy*, 950 F.2d at 337. Congress knew this, and it still instructed the courts to consider "all relevant factors." *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.").

Finally, our conclusion is supported by § 330's grant of discretion to the bankruptcy courts. Section 330(a)(1) makes the award of fees discretionary, not mandatory. 11 U.S.C. § 330(a)(1). Courts "may award" a professional "reasonable compensation" for "actual, necessary services," but the statute does not require them to award these fees. *See In re Robinson*, 189 F. App'x 371, 373 (6th Cir. 2006) ("A bankruptcy court is afforded broad discretion in determining attorney's fees." (citing 11 U.S.C. § 330(a))). And reviewing courts have consistently acknowledged the bankruptcy court's discretion in awarding fees. *See, e.g.*, *In re Boddy*, 950 F.2d at 338; *accord In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d at 1248–49 ("[B]ankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable." (quoting *In re Com. Fin. Servs.*, 427 F.3d 804, 810 (10th Cir. 2005))). Given this discretion, we think reading the list of factors as merely illustrative better fits the structure of the text.

So the text of § 330(a)(3) permits courts to consider factors not listed, including "results obtained."

**2.**

In response, the law firm argues that the "results obtained" factor conflicts with one of the codified factors instructing courts to look at whether a service was "beneficial at the time at which the service was rendered." In its view, by considering "results obtained," courts are not following Congress's directive.

But this argument is not well taken. There is no inconsistency in having courts look at both factors. Courts, for example, can compensate for services that were reasonably beneficial at the time they were performed and benefitted the estate. Or they could compensate a professional even if the services did not benefit the estate. *Cf. In re Veltri Metal Prods., Inc.*, 189 F. App'x 385, 390 (6th Cir. 2006) ("The absence of a reasonable likelihood of a distribution to the

unsecured creditors may be relevant in determining an award of fees . . . but it is not the sole consideration . . . ."). So what work is the "beneficial at the time" language doing? It ensures that bankruptcy courts do not automatically bar fees for attorneys when they are not ultimately successful. *See In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015) (en banc) ("Whether the services were ultimately successful is relevant to, but not dispositive of, attorney compensation.").

Next, the law firm argues that "results obtained" should not be considered because it would be reverting to the "spirit of economy" policy that Congress rejected. That policy assumed that "attorneys assisting the trustee in the administration of a bankruptcy estate are acting not as private persons but as officers of the court," so "they should not expect to be compensated as generously for their services" as private attorneys. *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977). We have recognized that in enacting the Bankruptcy Code, Congress rejected that spirit-of-economy view. *See In re Boddy*, 950 F.2d at 337. The firm cites *Boddy* for the view that using "results obtained" would be the same as applying the spirit-of-economy policy. But in doing so the firm undermines its own argument. True, *Boddy* rejected the "practice of the courts under the pre-Code Bankruptcy Act, when economy of the debtor's estate was a paramount concern." 950 F.2d at 337. But at the same time, *Boddy* adopted the "results obtained" factor. *Id.* at 338. If the *Boddy* court had thought that "results obtained" is an extension of the "spirit of economy," it would not have adopted one while rejecting the other.

In any event, considering "results obtained" does not revert the system back to the "spirit of economy" framework, nor does it discourage attorneys from specializing in bankruptcy. Why? Because Congress's remedy for "spirit of economy" was not to award bankruptcy attorneys all their requested fees. Instead, it was to give bankruptcy attorneys "compensation in parity with that received by attorneys performing services in comparable situations." 3 Collier, *supra*, § 330.03(3); *see In re Woerner*, 783 F.3d at 274–75 (explaining that Congress provided compensation "commensurate with the fees awarded for comparable services in non-bankruptcy cases" (quoting *In re UNR Indus., Inc.*, 986 F.2d 207, 208–09 (7th Cir. 1993))).

What's more, "results obtained" is one of the factors courts consider in non-bankruptcy cases. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (explaining that "had respondents prevailed on only one of their six general claims . . . a fee award based on the claimed hours clearly would have been excessive"). The lodestar factors, after all, came from a non-bankruptcy case. *See Johnson*, 488 F.2d at 715. We recognize some significant differences between the mechanics of fees in the fee-shifting context from those in the bankruptcy context. Under fee-shifting statutes, fees are shifted from the prevailing plaintiff to the losing defendant and are paid in addition to the award recovered. By contrast, in the bankruptcy context, no additional funds are created by the fee application process and the bankruptcy estate is diminished by any award. For that reason, fee-shifting caselaw does not automatically extend to the bankruptcy context. *See In re Piligrim's Pride Corp.*, 690 F.3d 650, 664–65, n. 18 (5th Cir. 2012). But these mechanical differences do not undermine our conclusion here that "results obtained" is an important consideration in both contexts, so we continue to consider the import from fee-shifting statutes in this limited circumstance.

Finally, the firm argues that this Court, as well as others, has held that "results obtained" are no longer a lodestar factor. Not so. All the cases that reject "results obtained" do so for the initial determination under § 330(a)(4)—whether the fees are compensable. None of these cases hold that once a court finds that the fees are compensable, it is barred from considering "results obtained" in determining "the amount of reasonable compensation" under § 330(a)(3). In other words, courts cannot rely on § 330(a)(4) to bar recovery if the services are not beneficial to the estate, but that does not mean that they cannot account for that fact when determining whether to lower fees.

The two unpublished decisions from this Court that the law firm cites support our reading of the statute. *See In re Veltri Metal Prods., Inc.*, 189 F. App'x at 390 (holding that "results obtained" cannot be considered for purposes of § 330(a)(4), but "may be relevant in determining an award of fees" under § 330(a)(3)); *In re Red Ball, Inc.*, 157 F. App'x 850, 852 (6th Cir. 2005) (holding that, for purposes of § 330(a)(4), it is "not fair to judge the necessity of the[] services with the benefit of hindsight").

So too with the out-of-circuit cases the firm relies on—none of them say that bankruptcy courts cannot consider "results obtained" as a factor under § 330(a)(3). *See In re Woerner*, 783 F.3d at 276 ("Whether the services were ultimately successful is relevant to, but not dispositive of, attorney compensation."); *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d at 1246–47 ("Subsequent to the adoption of § 330, this circuit has continued to consider the *Johnson* factors," including "the amount involved and the results obtained"); *In re Smith*, 317 F.3d 918, 926 & n.3 (9th Cir. 2002) (holding that § 330(a)(4)(A) does not require the services to actually provide an "identifiable, tangible, and material benefit" but noting that it was "not address[ing]" § 330(a)(3) (quoting *In re Xebec*, 147 B.R. 518, 523 (B.A.P. 9th Cir. 1992))); *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 130 (3d Cir. 2000) (same); *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (holding that, if services are "reasonably likely to benefit the debtor's estate, they should be compensable" (internal quotation marks omitted)), *abrogated on other grounds by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004).

In short, none of the cases that the law firm relies on supports its view. To the extent that they reject the "results obtained" analysis, they do so for § 330(a)(4), which deals with compensability. And to the extent that these cases discuss § 330(a)(3), they recognize that "results obtained" remains a relevant factor. So the law firm has failed to show that the bankruptcy court could not consider "results obtained" under § 330(a)(3).

**B.**

But even if the bankruptcy court can consider "results obtained," we still must determine whether it erred in reducing the law firm's fees by half.[4] We hold that it did not.

The bankruptcy court's reduction in fees was based on the law firm's minimal "results obtained." Recall that the law firm recovered $38,000 (of the $1.6 million potential claim) for the estate. Still, the firm sought a little over $37,000 in fees. This, the bankruptcy court found, would have left essentially nothing for the creditors. And so, the court concluded that the fees

---

[4]The law firm's argument is couched in terms of the "billing judgment" rule—its second claim that we did not address. But we read the firm's argument as a more general challenge to the bankruptcy court's reduction of fees by half because of the results obtained. So although we consider the firm's challenge to the bankruptcy court's reduction of fees, we do not consider arguments related to the "billing judgment" claim.

requested were "unreasonably high." *In re Vill. Apothecary, Inc.*, 626 B.R. 893, 912 (Bankr. E.D. Mich. 2021).

Although we have not previously decided whether a 50% reduction in fees under § 330(a)(3) based on "results obtained" can be an abuse of discretion, the Ninth Circuit has. *See In re Strand*, 375 F.3d 854, 861 (9th Cir. 2004). In *Strand*, the attorney pursued litigation that would have resulted in about $28,000 for the estate. *Id.* at 860. He asked for roughly $19,000 in fees, which would have left only $9,000 in the estate. *Id.* The Ninth Circuit explained that "[i]t is readily apparent that if the legal fees exceed the recovery, the estate is not benefitted." *Id.* at 861. And so it held that the bankruptcy court's reduction in fees by 50% was not an abuse of discretion. *Id.*

We recognize that the circumstances of each individual case will differ, still our assessment of the court's decision here is similar to the Ninth Circuit's. To be sure, the law firm here pursued a potential benefit that was more substantial than the attorney in *Strand*, but the "results obtained" were nonetheless minimal. The law firm's efforts to recover $1.6 million dollars resulted in only $38,000. What's more, had the bankruptcy court awarded the law firm all its fees, it would have left virtually nothing for the estate. So the court did not abuse its discretion in reducing the fees by half.

And reducing the fees by half based on the value of the work to the estate is consistent with what other courts have done.[5] For example, in *Allied Computers*, the bankruptcy court held that the attorney's fees should be limited to "no more than 50% of the amount recovered through the adversary proceeding" by the applicant. *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 888 (Bankr. W.D. Ky. 1996); *see also id.* at 885 (collecting cases on reduction of fee awards, including by one-half). And there the court awarded only $7,500 in legal fees for an attorney who recovered $15,000 for the client. *Id.* at 888–99. The court also reasoned that normally, outside the bankruptcy area, practitioners pursing claims on behalf of their clients handle similar cases on a one-third contingency basis. *Id.* at 888. Further, courts have reduced fees, even when the fees were reasonable and necessary, where there would not be "sufficient resources to pay

---

[5]We have affirmed a larger fee reduction than the one at issue (although the percentage of the total fees was less). *See In re Red Ball, Inc.*, 157 F. App'x at 852–53 (affirming an $80,000 reduction in legal fees).

administrative expenses." *In re McKenzie*, 494 B.R. 329, 336 (Bankr. E.D. Tenn. 2013). And the law firm has cited no authority to the contrary.

In the face of the broad discretion afforded to bankruptcy courts, we cannot say that the bankruptcy court abused its discretion here.

The law firm makes two responses, both unavailing. First, the firm claims that the bankruptcy court did not afford it notice to *disprove* its determination that fees should be reduced by 50%. But the "burden of proof as to entitlement to and reasonableness of a fee request is upon the moving party." *In re McLean Wine Co.*, 463 B.R. at 846 (internal quotation marks omitted). The bankruptcy court held a hearing on fees, and it was up to the law firm to prove why it was entitled to those fees. The firm did not meet that burden. Instead, the law firm seems to think that it only needed to show that the hourly rate and hours worked were reasonable. But reasonable hours and rates are a necessary but not sufficient condition to recover under § 330(a). If the hours and rates are reasonable, then the fees are compensable under § 330(a)(4), but the bankruptcy court may still (in its discretion) reduce those fees under § 330(a)(3). *See In re Boddy*, 950 F.2d at 338–39.

Second, the law firm argues that the bankruptcy court's decision is based on the spirit-of-economy policy that Congress rejected. True, Congress has rejected the spirit-of-economy policy, but the bankruptcy court's reduction in fees here was not based on that policy. Recall that Congress's solution to this policy was to put bankruptcy professionals on equal footing with comparable non-bankruptcy professionals. And in non-bankruptcy contexts, we have found that the court may consider "results obtained" in determining a proper fee award. *See, e.g.*, *Rui He v. Rom*, 751 F. App'x 664, 674 (6th Cir. 2018) (holding that a reduction in fees by 25% where the attorney was "largely, but not entirely, successful" was not an abuse of discretion); *Dean v. F.P. Allega Concrete Constr. Corp.*, 622 F. App'x 557, 560 (6th Cir. 2015) (citing *Hensley*, 461 U.S. at 436) (reversing the grant of attorney's fees because they were not proportionate to the "results obtained").

In sum, the bankruptcy court did not abuse its discretion by reducing the law firm's fees here by 50% based on the minimal results it obtained.

**IV.**

Because § 330(a)(3) permits courts to consider "results obtained," the court below did not abuse its discretion in doing so.  Nor did it abuse its discretion by reducing the law firm's fees by 50% after applying the relevant factors.  For these reasons, we **AFFIRM**.