NOT RECOMMENDED FOR PUBLICATION
File Name: 23b0003n.06

# BANKRUPTCY APPELLATE PANEL

### OF THE SIXTH CIRCUIT

IN RE:  ISLAND INDUSTRIES INC.

*Debtor.*

_____

GLANKLER BROWN, PLLC,

*Movant-Appellant.*

No. 23-8007

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee at Memphis.
No. 22-bk-20380—Jennie D. Latta, Bankruptcy Judge.

Decided and Filed:  August 23, 2023

Before: BAUKNIGHT, DALES, and MASHBURN, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Michael P. Coury, Ricky L. Hutchens, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellant.

_____

**OPINION**

_____

RANDAL S. MASHBURN, Bankruptcy Appellate Panel Judge.  This appeal concerns the bankruptcy court's *sua sponte* 25% reduction of debtor's bankruptcy counsel's fees without notice. The appellant asks the Panel to determine whether the reduction was made pursuant to the court's independent review of counsel's fee application pursuant to 11 U.S.C. § 330 with consideration of the "results obtained" in the dismissed Chapter 11 case, or as a sanction, and in either case, whether counsel was denied due process.  Given the bankruptcy court's reliance on the concept of deterrence in making the reduction, the Panel finds that the reduction was a sanction for which

counsel was denied notice and an opportunity to respond to the court's concerns and, thus, denied due process.  Although the appeal also raises due process issues in the context of fee applications generally, the Panel finds it unnecessary to resolve those questions in view of the bankruptcy court's heavy emphasis on sanctions-related reasoning in its decision.

## ISSUES ON APPEAL

Appellant Glankler Brown, PLLC ("Glankler" or "Appellant"), bankruptcy counsel to debtor Island Industries, Inc., asks the Panel to review whether the bankruptcy court denied it due process by (i) reducing its compensation as a sanction without notice and (ii) holding a hearing on its unopposed fee application without notice and in contravention of a local rule.  Because the Panel holds that the bankruptcy court imposed the fee reduction as a sanction without affording counsel due process, the Panel does not address the second issue.  Additionally, because the Panel is remanding the matter to the bankruptcy court for further proceedings, the Panel declines to review the merits of the fee reduction in this appeal.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit (the "BAP" or the "Panel") has jurisdiction to decide this appeal.  The United States District Court for the Western District of Tennessee has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court.  *See* 28 U.S.C. § 158(b)(6), (c)(1).

A final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686 (2015)).  This appeal involves a post-dismissal, final application for approval of debtor's counsel's fees and what counsel contends is a *sua sponte* imposition of sanctions by the bankruptcy court.

The matters were fully resolved by an order of the bankruptcy court with no further proceedings anticipated for the professional fee and sanctions matter or in the dismissed

bankruptcy case.  Under a *Bullard* and *Ritzen* analysis, the order denying Appellant's fee request and/or imposing sanctions against it is a final order.

Topically, the finality of the order is also supported by Sixth Circuit and BAP jurisprudence.  An order on a professional's fee application is considered final when the applicant's role in the proceeding is at an end.  *Dean v. Lane* (*In re Lane*), 598 B.R. 595, 598 (B.A.P. 6th Cir. 2019); *see also Cupps & Garrison, LLC v. Rhiel* (*In re Two Gales, Inc.*), 454 B.R. 427, 429 (B.A.P. 6th Cir. 2011) (An order denying a professional's final fee application is a final order.).  Orders imposing sanctions are also considered final orders once the monetary sanctions are assessed.  *See Spradlin v. Richard*, 572 F. App'x 420, 428 (6th Cir. 2014); *Hoover v. Jones* (*In re Jones*), 546 B.R. 12, 15 (B.A.P. 6th Cir. 2016).

The Panel reviews the question of whether the bankruptcy court has committed a due process violation *de novo*.  *Haffey v. Crocker* (*In re Haffey*), 576 B.R. 540, 543 (B.A.P. 6th Cir. 2017); *see also Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 439 F.3d 248, 265 (6th Cir. 2006).

## FACTS

Island Industries, Inc. ("Island" or "Debtor") filed a petition for relief under Chapter 11, Subchapter V, in February 2022.  Island's president, Mr. R. Glenn Sanders, signed the petition. Glankler, and specifically Michael P. Coury and Ricky L. Hutchens of that firm, represented Island with its bankruptcy filing and throughout its bankruptcy case.

In May 2022, shortly after Island had filed its proposed plan of reorganization, Sigma Corporation ("Sigma") filed an adversary proceeding against Island seeking $40 million for alleged violations of various trade secret acts (the "Trade Secret Litigation").  At Island's request, the U.S. District Court withdrew the reference from the bankruptcy court in October 2022, thus assuming jurisdiction over the Trade Secret Litigation.

Sigma moved to dismiss Island's bankruptcy case on grounds of bad faith in July 2022, and ASC Engineered Solutions, LLC ("ASC"), another creditor, joined the motion.  Sigma and ASC asserted that Island filed the bankruptcy in bad faith as a litigation tactic.  Island opposed the

motion to dismiss. The bankruptcy court conducted an evidentiary hearing in October 2022 and dismissed Island's bankruptcy case as a bad faith filing on November 15, 2022. Island did not appeal the dismissal.

On December 13, 2022, Glankler filed its final application for allowance of compensation and reimbursement of expenses, requesting total fees of $249,306.75 and expenses of $7,813.17. ("Fee Application," Bankr. Case. No. 22-20380, ECF 223.) Glankler asserts that approximately $100,000 of the fees related to representing Debtor in the bankruptcy case and approximately $150,000 related to defending Debtor against trade secret claims asserted by Sigma both before and after Sigma filed the Trade Secret Litigation. The bankruptcy court made no finding about the allocation of fees.

The next day, the Court issued a Notice of Hearing on the Fee Application. ("Notice of Hearing," Bankr. Case No. 22-20380, ECF 224.) The Notice of Hearing was issued in accordance with Local Rule 9013-1[1] and stated:

> 1. The Hearing to consider the above shall be held on **January 19, 2023 at 10:15 AM , 200 Jefferson Ave, Room 645, Memphis, TN 38103 , BUT ONLY IF an objection to such relief requested is filed by January 12, 2023**
>
> . . .
>
> 3. If no objection is filed by any creditor or interested party, including the debtor, by the date stated above in paragraph one, the movant shall promptly file a certificate in compliance with L.B.R. 9013−1 and the proposed order on such matter

---

[1]LBR 9013-1 applies to "all motions, applications, objections to claims, and proposed consent orders in which relief is sought after notice and hearing," with limited, non-applicable exceptions. TNWB LBR 9013-1. For Chapter 11 cases, the rule provides that the court "will fix a date for the filing of objections, if any, and an initial date and time for hearing." LBR 9013-1(b)(1). The rule further provides:

> (2) If No Objection is Filed. If no objection is timely filed, the relief sought may be granted without an actual hearing. Once the deadline for filing objections has passed, the moving party may submit a proposed order together with a certificate indicating that the moving party has reviewed the docket and determined that no objection was timely filed (Local Form 008F). Only the signature of the party or attorney preparing the order must appear on the order. See generally TNWB LBR 9074-1 for the signatures required on other proposed orders.

> (3) If an Objection is Filed. If an objection is timely filed, the matter will be heard when scheduled.

LBR 9013-1(b)(2)-(3).

with the Bankruptcy Court for entry thereof, and there will not be a hearing conducted on the date stated in paragraph one above.

(*Id.* (emphasis original).)  On January 16, 2023, Glankler filed a Certificate of Compliance with LBR 9013-1 stating that there had been no objection to its Fee Application.

Meanwhile, Sigma had filed a Motion for Sanctions on December 20, 2022, seeking monetary sanctions against Debtor and its president, Mr. Sanders, pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9011 based on Debtor's bad faith filing of bankruptcy. ("Motion for Sanctions," Bankr. Case No. 22-20380, ECF 227.)  Sigma sought a monetary sanction of $200,000 to be assessed against Debtor and Mr. Sanders jointly and severally but did not seek sanctions against any other party or any attorney.  Glankler objected to the Motion for Sanctions on behalf of Debtor and Mr. Sanders, and Sigma filed a reply.  The court set the Motion for Sanctions for hearing on January 19, 2023, in the event of any timely-filed objection – in the same manner that the court had set the hearing on Glankler's Fee Application.  Because an objection was filed to the Motion for Sanctions, it was clear under both the local rule and the notice of hearing for the Motion for Sanctions that a hearing would be held on that motion on January 19.

In contrast to the situation with the Motion for Sanctions, Glankler could not have anticipated or prepared for any hearing on the Fee Application.  With no objection to the Fee Application, the local rule and the express language in the Notice of Hearing indicated there would be no actual hearing on the Fee Application on the tentative hearing date of January 19, 2023.  The court provided no other notice on the case docket that the hearing on Glankler's Fee Application would go forward on January 19 despite the lack of a filed objection.  However, the court did proceed to hold a hearing that day immediately after the hearing on the Motion for Sanctions.[2]  Mr. Coury was in the courtroom at that time only because he was there in his role as Debtor's counsel opposing the Motion for Sanctions.

At the hearing, Glankler's counsel and the court had this exchange about notice:

THE COURT: …. Okay. Now, what I want to do is hear about these fee applications, which, frankly, I think are related to this whole discussion.  So I know

---

[2]The court also held a hearing on a fee application filed by another lawyer who had represented Debtor in a more limited capacity.  That application is not at issue in this appeal.

there was not an objection filed, but as you both know, the Court has an independent obligation to review fee applications.

And so, Mr. Coury, I want to hear from you in support of your fee application.

MR. COURY: Your Honor, I didn't even bring a copy of the fee application with me because it was unopposed.

THE COURT: But it was set for hearing.

MR. COURY: Well, it was. I filed a 9013, and I didn't expect the Court was going to have any -- any question.

THE COURT: Well, I'm sorry about that. Because I do communicate when I want something heard. We do have a calendar that's public. And I review everything the week before, and I set this for hearing.

MR. COURY: Fine. I'm happy to answer any questions the Court has. We've recited some parameters in our response. . . .

(Hearing Transcript at 48:22-24, Bankr. Case No. 22-20380, ECF 286.) There is nothing in the record on appeal regarding any hearing being included on a public calendar. Regardless, it is clear that Glankler was relying on the local rule and the Notice of Hearing, and there is no reason to think that anyone other than the bankruptcy court expected a hearing to occur when Glankler had already submitted its certification that no objection was filed. As Mr. Coury noted, he did not even bring a copy of the Fee Application with him to court. Glankler simply had no reason to suspect there might be a hearing on the Fee Application.

Presumably in response to the judge stating that she "want[ed] to hear from [Mr. Coury] in support of [his] fee application," Mr. Coury described the services his firm provided, including informing the court that approximately $150,000 of the requested fees related to defending Debtor against the Trade Secret Litigation, not the bankruptcy case, and asserting that Glankler had case law support for it not being bad faith for a debtor to file bankruptcy to avoid posting a litigation bond. (*Id.* at 48-52.) The court listened but did not ask Mr. Coury any questions and at no time suggested the possibility of sanctions for counsel. The court even stated: "No. I think that's fine," when Mr. Coury offered to answer any questions the court might have. (*Id.* at 52:22.)

At the end of the hearing, the court announced:

> I am going to enter written rulings on these.
>
> Obviously, when a bankruptcy case is dismissed, there is concern. Sanctions to me again are somewhat related only in that you've asked me to consider the impact to the debtor. So I have to consider the impact of fees to the debtor, as well. That's – I'm going to be giving some thought to it.

(*Id.* at 59:7-14.) The court then concluded the hearing without alerting counsel to the possibility of sanctions against Glankler.

On February 8, 2023, the bankruptcy court entered orders on Sigma's Motion for Sanctions, as well as Glankler's Fee Application and that of another attorney (not involved in this appeal). The Order on the Fee Application merely provides that fees and expenses were awarded to Glankler in a certain amount, "[c]onsistent with" the court's Opinion. (Order, Bankr. Case. No. 22-20380, ECF 249.) The court entered one opinion in support of all three orders. (Memorandum Opinion on Motion for Sanctions and Fee Applications ("Opinion"), Bankr. Case. No. 22-20380, ECF 248.) In the Opinion, the court explained its decision to reduce the entire amount of Glankler's fees by 25%, which resulted in a reduction of compensation by more than $62,000. (*Id.* at 18.)

Glankler timely appealed the Order to the Panel. Given the *sua sponte* nature of the order under review, there is no appellee involved in this appeal.

## DISCUSSION

Glankler argues that the reduction of its compensation by 25% was a *sua sponte* sanction by the bankruptcy court for which it received no notice and opportunity for hearing, resulting in a patent denial of due process. To the extent the bankruptcy court reduced Glankler's compensation pursuant to the court's independent obligation to review professional fee applications under 11 U.S.C. § 330, Glankler also argues that it had no notice that there would be a hearing so it was denied due process under this theory as well.

**I.  Was the Denial of Fees a Sanction or a § 330(a) Fee Reduction?**

Unquestionably, a bankruptcy court "may, on its own motion[,] award compensation that is less than the amount of compensation that is requested" by a professional employed by the trustee/debtor-in-possession.  11 U.S.C. § 330(a)(2).  Bankruptcy courts enjoy wide discretion in determining the amount of fees to award, *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 948–49 (6th Cir. 2022), and one of the factors they may consider is the "results obtained" in the case, *id.* at 947-51.  Therefore, the bankruptcy court had the authority under § 330 to reduce Glankler's fees based on the fact that Island's bankruptcy case had been dismissed for bad faith.  But is that what the bankruptcy court did?  The Panel concludes it was not.

Throughout the Opinion, the court equivocated about whether the fee reduction was a sanction or garden-variety exercise of the court's authority under § 330(a).  The court noted that "[a]lthough no objection was filed with respect to either of the[] [fee] applications, the court took both under submission to consider them in connection with the Motion for Sanctions," implicating the premise of deterrence.  (*Id.* at 6.)  The court also stated, however, that it "has exercised its independent obligation to review these applications in light of the result obtained in this case," referring to the exercise of discretion under § 330(a).  (*Id.* at 2.)

Although the court referred to its authority to reduce fees under § 330 based on the results obtained in the case, its decision is filled with sanctioning language and rationale, too much to ignore given the impact of a sanction order on an attorney.  For example, the court noted that "[a]mong the inherent powers of any federal court are 'the power to control admission to its bar and discipline attorneys who appear before it,' and 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"  (*Id.* at 7 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41-46, 111 S. Ct. 2123 (1991)).)  The court then quoted subsection (c) of Rule 9011, which applies to sanctioning attorneys and law firms – as opposed to parties – and noted that the central purpose of Rule 11 is to "deter baseless filings."  (*Id.* at 8-9 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 2454 (1990)).)  The court later justified its reduction of Glankler's fees by 25% as appropriate "to deter similar conduct by these attorneys and others in the future."  (*Id.* at 18.)

The court also lumped Glankler in with Debtor and Mr. Sanders when discussing whether to award sanctions, such as asking: "Was the Conduct of Island's Attorneys or Mr. Sanders Egregious?"; "Are Further Sanctions Necessary to Deter Similar Conduct by Island's Attorneys, Mr. Sanders, or Third Parties?"; and was the sanction request unreasonable as to the attorneys? (*Id.* at 11, 15, 16.)

Additionally, the court said the reduction was of "fee requests related to representation of the Debtor in connection with the bankruptcy case," which had been dismissed, but the court did not limit the reduction to fees for work done on the bankruptcy case. (*Id.* at 18.) Instead, the court applied the reduction to all of Glankler's fees, which included $150,000 in fees Glankler contends it incurred in representing Debtor in the Trade Secret Litigation, which was then undecided and for which no result had yet been obtained. The broadly-applied fee reduction signals that the court intended the reduction as a sanction rather than a reduction in fees under § 330(a) based on the "results obtained" in the dismissed bankruptcy case.

This case bears similarities to *Newman v. Smith* (*In re Smith*), 256 B.R. 730 (W.D. Mich. 2000), in which the denial of professional fees was determined to be a sanction instead of a § 330 fee reduction. In that case, chapter 13 debtors substituted counsel in the first year of their bankruptcy case. The original counsel filed a fee application, and several parties objected to, among other things, the reasonableness of fees and the lack of benefit to the estate from work performed. *Id.* at 732-33. The bankruptcy court first determined that only approximately half of the hours billed were reasonable and that the rate of pay should be reduced based on the quality of work. It then calculated the total fees at the reduced number of hours and rate of pay, thus determining the reasonable amount of fees under the lodestar method, plus the amount of reimbursable costs. *Id.* But the court went on to decline to award *any* reasonable fees or costs, holding that the attorney should never have filed the petition without reviewing certain documents. *Id.* The bankruptcy court opined: "This case, in my view, is an example of – I don't want to use too strong of a word here, but I'm going to, incompetence or, from my point of view, violation of Rule 11 on making a reasonable investigation as to the facts before papers are filed with the court." *Id.*

On appeal, the district court in the *Smith* case affirmed the bankruptcy court's determination of the reasonable amount of fees and rate of pay, but it deemed the denial of all fees to be a sanction for which the attorney had not been provided notice. *Id.* at 735-36. The court acknowledged that the bankruptcy court's decision not to award any fees arguably could have been justified under § 330 because the bankruptcy court had determined that the case should never have been filed, but that was not the impression the bankruptcy court's opinion made upon the district court. *Id.* at 735. The court stated:

> That interpretation, however, does not fully comport with the tenor of the hearing. While the bankruptcy court did not state that it was sanctioning [counsel's] conduct, it implied that the refusal to award fees was a sanction, not a determination that the services rendered were not beneficial to the estate at the time they were completed.

*Id.* at 735–36. The district court reversed the outright denial of fees because it was a sanction for which the bankruptcy court had not provided the attorney with notice and an opportunity for hearing. *Id.* at 736.

In the Panel's view, the fee reduction in this case functioned as a sanction. The bankruptcy court's decision to reduce Glankler's fees by 25% was based primarily on an expressed intention to deter similar conduct by counsel in the future. It was not based on an analysis of the benefit to the estate from the work performed or what amount of compensation would be reasonable in light of the results obtained, as might be expected under a § 330 analysis. *See generally Vill. Apothecary*, 45 F.4th at 947-49.

## II. Was Appellant Afforded Due Process Prior to Being Sanctioned?

In its Opinion, the bankruptcy court referred to Rule 9011 and its inherent authority to sanction but did not clearly specify upon which source it relied. Under either source of sanctioning authority, however, due process requires notice and an opportunity to be heard prior to the issuance of sanctions.

First, Rule 9011(c) provides that sanctions may be imposed against attorneys or law firms "after notice and a reasonable opportunity to respond[.]" Fed. R. Bankr. P. 9011(c). When the court intends to issue sanctions "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party

to show cause why it has not violated subdivision (b) with respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B). A motion for sanctions may also be brought by a party under Rule 9011(c)(1)(A), but that did not occur here. Regardless of whether the court follows the recommended process in subsection (c)(1)(B) of issuing a show cause order, at a minimum the court is required to provide "notice and a reasonable opportunity to respond" according to the broader subsection (c). The court did not issue a show cause order or provide Glankler with any other notice that it might be sanctioned under Rule 9011.

Courts also have inherent authority to sanction counsel for certain bad faith conduct by assessing fees against them. *Chambers*, 501 U.S. at 45. "A court must . . . exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* at 50 (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980) ("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.")).

Due process requires that, "[a]t bottom, a court must give notice to the party facing sanctions and an opportunity to be heard." *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 377 (6th Cir. 2022). To satisfy notice, a party must be informed that sanctions are being sought against it specifically. *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 797 F. App'x 1002, 1006 (6th Cir. 2020) (finding that a footnote in a reply brief was insufficient to put attorneys on notice that sanctions might be imposed against them individually in addition to their law firm, which was the subject of the motion for sanctions).

"[A] party or attorney facing sanctions must … have a meaningful opportunity to respond to the allegations against them." *KCI USA, Inc.*, 797 F. App'x at 1007. That does not necessarily mean a full evidentiary hearing.[3] *NPF Franchising, LLC*, 37 F.4th at 377. The opportunity to

---

[3]Although an evidentiary hearing may not be required, the Sixth Circuit has counseled that a supplemental evidentiary hearing may be the wisest course when a court is sanctioning lawyers based on the record developed as to the lawyers' *client's* conduct and credibility when the initial hearing did not include evidence concerning what the *lawyers* knew or did not know. *See In re Big Rapids Mall Assocs.*, 98 F.3d 926, 929-30 (6th Cir. 1996); *see also Chambers*, 501 U.S. at 47, 49 (a sanction based on a party or counsel's bad faith mandates such a finding prior to the imposition of the sanction).

respond may be satisfied by an opportunity to brief an issue or file a written response. *Id.*; *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000).

In this case, Glankler was provided no notice that it might be sanctioned. Sigma did not request sanctions against Glankler in its Motion for Sanctions. The court did not enter a show cause order or provide any other notice to Glankler that the court was contemplating sanctioning it and providing the reasons why. Even at the hearing on the Motion for Sanctions and Glankler's Fee Application, the bankruptcy court did not ask Glankler why it should not be sanctioned along with Debtor and its principal or otherwise inform Glankler that the court was considering sanctioning the firm. The Panel does not suggest that notice provided for the first time at the hearing would have satisfied due process, but its absence even at that stage is notable. Without any notice, Glankler had no meaningful opportunity to respond to the court's concerns in writing or at the hearing.

Whether assessed under Rule 9011 or pursuant to the court's inherent power, Glankler was due, but denied, notice of the court's intent to sanction Glankler through reduction of its fees and the opportunity to be heard regarding such sanction. Thus, Glankler was denied due process.

Whether imposed as a sanction or to ensure reasonableness, a 25% reduction in fees hits a law firm's bottom line in the same way. A sanction, however, sends a very different message, potentially tarnishing a lawyer's reputation and professional standing in a manner that raises the stakes. In that situation, it is even more critical to follow the "specific dictates of due process." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976). Nothing in this opinion should be read to limit the bankruptcy court's authority to impose or withhold a sanction on remand if due process requirements are met and the record reflects justification for such action. Likewise, this opinion should not be read to restrict the bankruptcy court from embracing § 330(a) as its rationale for an appropriate reduction if warranted. However, given the stakes involved, due process considerations may still apply.[4]

---

[4] Because we find the fee reduction to have been a sanction, the Panel does not review the issue of whether Glankler was afforded due process to the extent the bankruptcy court was reducing Glankler's fees pursuant to 11 U.S.C. § 330(a)(2). However, the Panel notes that there is substantial authority from other circuits interpreting § 330 (or a similar provision in Rule 2017(b)) and § 102(1) as requiring notice by the court of a potential *sua sponte*

## CONCLUSION

For the reasons explained, the Order on Glankler's Fee Application is VACATED, and the matter is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

---

fee reduction and a meaningful opportunity to respond in writing or at a hearing. *See, e.g., In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 845-47 (3d Cir. 1994) (holding that if the bankruptcy court plans to disallow compensation under § 330, the Code and dictates of due process require the court to inform the applicant of its concerns and allow the applicant, upon request, an opportunity to present evidence or argument in support of its application and in response to the court's concerns at a hearing); *In re Eliapo*, 468 F.3d 592, 602, 603 (9th Cir. 2006) (citations omitted) (holding that if a court, under Rule 2017(b), "materially reduces the amount requested, the bankruptcy court has assumed a role that is adverse to the fee applicant," and "the court should give counsel a *meaningful* opportunity to be heard" by informing counsel of its questions and objections and giving the applicant an opportunity to respond, whether in writing or at a hearing); *In re Peterson*, 251 B.R. 359, 366 (B.A.P. 8th Cir. 2000), *aff'd*, 13 F. App'x 491 (8th Cir. 2001) ("We agree with the *Busy Beaver* Court that fee applicants are entitled to a meaningful hearing regarding the reasonableness of their requested fees."); *In re Pfleghaar*, 215 B.R. 394, 397–98 (B.A.P. 8th Cir. 1997) (same); *In re Burlington Motor Holdings, Inc.*, No. CIV. A. 98-77 MMS, 1998 WL 864827, at *2–3 (D. Del. Nov. 24, 1998), *aff'd*, No. 95-1559 (JKF), 2002 WL 63595 (D. Del. Jan. 17, 2002) (holding that the bankruptcy court had denied a fee applicant a *meaningful* hearing when the court's only two questions of the applicant did not raise any of the concerns the court used to justify its decision to reduce fees, and noting: "[h]ad the Bankruptcy Court timely voiced these concerns during the hearing, the appellant would have had an opportunity to offer evidence in support of its fee application and to allay the court's concerns").